UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **MATTHEW CALEB SAWYER** | **CIVIL ACTION NO. 23-0708** |
| | |
| | **SECTION P** |
| VS. | |
| | **JUDGE TERRY A. DOUGHTY** |
| | |
| **JAMES LEBLANC, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Plaintiff Matthew Caleb Sawyer, a prisoner at Morehouse Parish Detention Center proceeding pro se and in forma pauperis, filed this proceeding on approximately May 25, 2023, under 42 U.S.C. § 1983. He names the following defendants: James LeBlanc, Medical Director Debbie Ash, an unidentified medical director at Catahoula Correctional Center, and an unidentified medical director at Elayn Hunt Correctional Center.[1] For reasons that follow, the Court should dismiss Plaintiff's claims.

## Background

The genesis of Plaintiff's complaints appears to be a lack of medical care for Hepatitis C, arthritis, and cervical and lumbar spondylosis at five correctional facilities in Louisiana over the past five years. In approximately 44 pages,[2] Plaintiff presents a winding, nonsequential narrative of his medical history and grievances against defendants at different correctional facilities, beginning approximately March 9, 2018, at Nelson Coleman Correctional Center ("NCCC"). [doc. # 1]. Of note, Plaintiff has litigated and is litigating some of the same allegations about the

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

[2] Plaintiff also attaches fifty-two pages of exhibits.

same medical needs he presents here in at least two other federal proceedings and one state court proceeding.

On February 2, 2021, Plaintiff was transferred to "LA Workforce in Dequincy, LA." *Id.* at 12.

On approximately March 8, 2021, Plaintiff filed a civil rights lawsuit in the United States District Court, Eastern District of Louisiana, alleging *inter alia* that defendants were deliberately indifferent to his serious medical needs while he was confined in NCCC. *Matthew Caleb Sawyer v. Kecia Charles, et al.*, 2:21-cv-0482 (E.D. La. 2021). That proceeding remains pending. [doc. # 1, p. 13].

On June 17, 2021, Plaintiff was transferred to Catahoula Correctional Center ("CCC"). *Id.* at 16.

On August 15, 2021, Plaintiff was transferred to Madison Parish Correctional Center ("MPCC"). *Id.* at 18.

"In January of 2022, the plaintiff filed a complaint for judicial review in the 19th District of East Baton Rouge Parish against the Department of Public Safety and Corrections (James LeBlanc)" concerning a missed neurology appointment and "the inadequacies of NCCC, LA Workforce . . ., CCC, and MPCC[.]" *Id.* at 22, 24-25. Plaintiff states that this lawsuit is pending. *Id.* at 23.

On approximately March 2, 2022, Plaintiff filed a civil rights lawsuit in this Court, alleging *inter alia* that the defendants failed to provide proper medical care while he was confined in MPCC and interfered with his access to the courts. *Matthew Caleb Sawyer v. Chris Stinson, et al.*, 3:22-cv-0602 (W.D. La. 2022).

2

In approximately April 2023, Plaintiff was transferred to Morehouse Parish Detention Center.

In the instant proceeding, Plaintiff first claims that he "has been prevented from presenting" claims against Secretary LeBlanc and the medical director at EHCC. [doc. # 1, p. 24]. He suggests that he lacked access to the courts because NCCC, LA Workforce, CCC, and MPCC were "inadequat[e]." *Id.* He appears to claim that because those facilities were inadequate, he is unable to litigate his pending state court proceeding. *Id.*

Plaintiff next claims that Secretary LeBlanc failed to adhere to a state statute, which allegedly permitted LeBlanc to transfer inmates to other facilities. *Id.* at 25. He claims that LeBlanc did not grant his request for a transfer to a "DOC[3] Prison due to his medical concerns and legal pursuits." *Id.* Plaintiff then catalogs several alleged consequences of LeBlanc's alleged failure to transfer him, including an inability to obtain medical documents and legal materials, an inability to obtain medical test results and use them to prevail in his state court proceeding, dismissed claims in federal proceedings, a lack of medical care, an inability to prepare and file lawsuits, a missed court deadline, and a lack of "legal assistance facilities," law libraries, and copies of legal documents. *Id.* at 25-31.

Plaintiff claims that LeBlanc has not ensured "that MPCC has been in compliance with established standards of the DOC in regards to faith based programs." *Id.* at 32-35.

Plaintiff claims that LeBlanc failed to ensure that institutions under his jurisdiction were operated in accordance with "DOC Standards/Policy[.]" *Id.* at 35. "[P]rograms and personnel at all the facilities [Plaintiff] has been housed were not in accordance with DOC Standard/policy[.]"

---

[3] By "DOC," Plaintiff presumably refers to the Louisiana Department of Public Safety and Corrections.

3

*Id.* He alleges that LeBlanc "was/is aware of the inadequate training, poorly executed procedures, lack of programs, denial of medical care, high volume of violence, drug infestation, lack of mental health services (or no services), and the inability classify inmates." *Id.* at 35-36.

Plaintiff claims that LeBlanc has not ensured "that medical staff at NCCC, LA Workforce, CCC, and MPCC have/has provided medical care to inmates according to DOC Standard/Policy." *Id.* at 36-37.

Plaintiff claims that the medical director at Elayn Hunt Correctional Center ("EHCC") was aware of his serious health concerns yet "deliberately refused to treat him, thus causing him to suffer in serious pain and discomfort and potentially further complicating his spine condition[.]" *Id.* at 37. He adds that he "has yet to have his neurology appointment fulfilled with the FULL host of bloodwork conducted, which was ordered by the neurologist on December 8, 2020." *Id.* at 37-38. Plaintiff concedes that "bloodwork [] was ordered by the doctor here at Morehouse Parish Detention Center[,]" but he maintains that "those items . . . are not all of the items neurology ordered in December of 2020." *Id.* at 38.

Plaintiff alleges, "Each facility has displayed the same patterns of behavior by ignoring [his] request forms/medical sick-calls/ARPs, refusing medical treatment, refusing access to medical records, refusing to transfer medical records, refusing him copies of legal work, and not allowing law library access." *Id.* at 39. Because of these "violations," Plaintiff believes defendants "have conspired against him." *Id.* 39, 41.

Plaintiff seeks compensation for pain and suffering and punitive damages. [doc. # 1, p. 5].

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[4] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing

---

[4] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

*Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was

6

committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Access to Court**

Plaintiff claims that he "has been prevented from presenting" claims against Secretary LeBlanc and the Medical Director of EHCC. [doc. # 1, p. 24]. He suggests that he lacks access to the courts because NCCC, LA Workforce, CCC, and MPCC were "inadequat[e]." *Id.* He appears to claim that because those facilities were inadequate, he is unable to litigate his pending state court proceeding. *Id.*

First, however, Plaintiff does not identify a responsible defendant. Thus, the Court should dismiss this claim on that basis alone.

Plaintiff does mention that he "expressed" the facilities' inadequacies to the DOC. *Id.* at 24. However, he does not name the DOC as a defendant or otherwise seek relief from the DOC. Even assuming he did, the DOC is not a "person" under Section 1983. Liability under 42 U.S.C. § 1983 only applies to "person[s]" who deprive others of rights secured by the Constitution. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). "State agencies . . . are not 'persons' within the meaning of the statute." *Lumpkins v. Off. of Cmty. Dev.*, 621 F. App'x 264, 268 (5th Cir. 2015) (*quoting Will*, 491 U.S. at 71). The DOC is a state agency. Thus, it is not a "person" under Section 1983. *See Washington v. Louisiana*, 425 F. App'x 330, 333 (5th Cir. 2011) ("The State and [Department of Public Safety and Corrections] are not persons . . . .").

The Court should dismiss this claim.

3. Failure to Transfer

Plaintiff claims that Secretary LeBlanc failed to adhere to LA. REV. STAT. § 15:824(A), which allegedly permitted LeBlanc to transfer inmates to other facilities. [doc. # 1, p. 25]. He claims that LeBlanc did not grant his request for a transfer to a "DOC Prison due to his medical concerns and legal pursuits." *Id.* He then catalogs several consequences of LeBlanc's alleged failure to transfer him, including an inability to obtain medical documents and legal materials, an inability to obtain medical test results and use them to prevail in his state court proceeding, dismissed claims in federal proceedings, a lack of medical care, an inability to prepare and file lawsuits, a missed court deadline, and a lack of "legal assistance facilities," law libraries, and copies of legal documents. *Id.* at 25-31.

Secretary LeBlanc, in his official capacity, does not qualify as a "person" under Section 1983. To reiterate, liability under 42 U.S.C. § 1983 only applies to "person[s]" who deprive others of rights secured by the Constitution. "State officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them." *Hafer v. Melo*, 502 U.S. 21, 27 (1991). "[T]he real party in interest in an official-capacity suit is the governmental entity and not the named official . . . ." *Id.* The State of Louisiana employs LeBlanc. The State of Louisiana is also not a "person" under Section 1983: "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, the Court should dismiss Plaintiff's claims against the Secretary LeBlanc in his official capacity.

Even assuming Plaintiff names LeBlanc in his individual capacity, Plaintiff fails to state a plausible claim. The gravamen of Plaintiff's claim is that LeBlanc failed to transfer him to a

"DOC prison," where he could allegedly obtain legal materials, his medical documents and results, and medical care. A prisoner, however, has no constitutional right to be housed in any particular facility or transferred from one facility to another, even if conditions and amenities in one may be preferable to another. *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Fuselier v. Mancuso*, 354 F. App'x 49, 2009 WL 3780729, at *1 (5th Cir. Nov. 12, 2009). "The Due Process Clause does not, by itself, endow a prisoner with a protected liberty interest in the location of his confinement." *Yates v. Stalder*, 217 F.3d 332, 334 (5th Cir. 2000).

To the extent Plaintiff claims that LeBlanc failed to adhere to LA. REV. STAT. § 15:824(A), his claim is not cognizable under Section 1983. "[A] violation of a state statute alone is not cognizable under § 1983 because § 1983 is only a remedy for violations of federal statutory and constitutional rights." *Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005). In *Mathews v. Bowie Cty., Tex.*, 600 F. App'x 933, 934 (5th Cir. 2015) (internal citations removed), for example, the plaintiff alleged that correctional officers violated a state statute, but the court opined: "his conclusory allegations that his treatment violated the Texas Administrative Code are insufficient to establish § 1983 liability. Such action may constitute a breach of contract or violation of state law, but unless the conduct trespasses on federal constitutional safeguards, there is no constitutional deprivation."

Finally, Plaintiff does not appear to claim that LeBlanc violated his right to access the courts. As above, the main thrust of Plaintiff's claim is that LeBlanc failed to transfer him to a facility where he could obtain better access to the courts. Even assuming Plaintiff did claim that LeBlanc violated his right to access the courts (Plaintiff's allegations in this respect are exceedingly difficult to decipher), the ostensible claim is implausible.

Plaintiff suggests that because of LeBlanc's unspecified actions, he is unable to properly

litigate three pending proceedings: *Matthew Caleb Sawyer v. Kecia Charles, et al.*, 2:21-cv-0482 (E.D. La. 2021); *Matthew Caleb Sawyer v. Chris Stinson, et al.*, 3:22-cv-0602 (W.D. La. 2022); and a state court proceeding in the 19th Judicial District Court, "(Suit # C-715344)." All three proceedings remain pending.

To succeed on claim that a defendant violated a plaintiff's right to access the courts, the plaintiff must show that he lost an actionable claim or was prevented from presenting such a claim because of the alleged denial. *Lewis v. Casey*, 518 U.S. 343, 356 (1996). The "injury requirement is not satisfied by just any type of frustrated legal claim." *Id.* at 353. Rather, a plaintiff must demonstrate that the lack of access prevented him from filing or caused him to lose a case that attacks either his conviction or seeks "to vindicate 'basic constitutional rights'" in a civil rights action under 42 U.S.C. § 1983. *Id.* at 353-54 (*quoting Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)).

As to Plaintiff's pending proceedings, he has not yet lost.[5] *See Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996) ("[T]o make out a claim that his constitutional right of access to the courts has been violated, [a plaintiff] must have demonstrated that his position as a litigant was prejudiced by his denial of access to the courts."). Plaintiff has not identified "a remedy that is not otherwise available in another suit . . . ." *See Waller v. Hanlon*, 922 F.3d 590, 602 (5th Cir. 2019) (finding that the plaintiffs did not identify a remedy that is not otherwise available in another suit that may yet be brought because the plaintiffs were actively litigating their underlying claim, because it was "too early to say" that the plaintiffs' underlying claim was

---

[5] Plaintiff states, for example, that "if" his "case gets dismissed . . . it is because" of deficiencies in "the prison's legal assistance facilities." [doc. # 1, p. 28 (emphasis added)]. In other words, his case remains pending. He also states that in state court he is currently litigating the "inadequacies of" the various facilities in which he was confined. *Id.* at 24-25.

compromised, and because the plaintiffs had yet to suffer a "concrete setback traceable to the defendants'" actions).[6]

Plaintiff does not identify any specific claim, defense, or proceeding that he cannot presently prepare or file, that he could not prepare or file in the past, that he lost, or for which he could not or cannot obtain a remedy.

Accordingly, the Court should dismiss these claims.

**4. Violations of State Law**

Plaintiff claims that LeBlanc "has not insured that MPCC has been in compliance with established standards of the DOC in regards to faith based programs." [doc. # 1, pp. 32-35]. Specifically, he claims that LeBlanc violated "15:828.2," purportedly entitled, "Faith-based programs for inmates; development; monitoring." *Id.* at 32.

Plaintiff also claims that LeBlanc failed to ensure that institutions under his jurisdiction were operated in accordance with "DOC Standards/Policy[.]" *Id.* at 35. "[P]rograms and personnel at all the facilities [Plaintiff] has been housed were not in accordance with DOC Standard/policy[.]" *Id.* He alleges that LeBlanc "was/is aware of the inadequate training, poorly executed procedures, lack of programs, denial of medical care, high volume of violence, drug infestation, lack of mental health services (or no services), and the inability classify inmates." *Id.* at 35-36.

---

[6] "There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

Finally, Plaintiff claims that LeBlanc has not ensured "that medical staff at NCCC, LA Workforce, CCC, and MPCC have/has provided medical care to inmates according to DOC Standard/Policy." *Id.* at 36-37.

As above, however, LeBlanc does not qualify as a "person" under Section 1983 in his official capacity. Again, the Court should dismiss Plaintiff's claims against the Secretary LeBlanc in his official capacity.

Even if Plaintiff named Leblanc in his individual capacity, the claims above are not cognizable under Section 1983. To reiterate, "[A] violation of a state statute alone is not cognizable under § 1983 because § 1983 is only a remedy for violations of federal statutory and constitutional rights." *Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005); *Giovanni v. Lynn*, 48 F.3d 908, 913 (5th Cir. 1995) ("[A] simple failure to comply with state procedural requirements may be a violation of state law, but it does not constitute a constitutional violation.").

The Court should dismiss these claims.

**5. Medical Care**

Plaintiff claims that the Medical Director at EHCC was aware of his serious health concerns yet "deliberately refused to treat him, thus causing him to suffer in serious pain and discomfort and potentially further complicating his spine condition[.]" [doc. # 1, p. 37]. He adds that he "has yet to have his neurology appointment fulfilled with the FULL host of bloodwork conducted, which was ordered by the neurologist on December 8, 2020." *Id.* at 37-38. Plaintiff concedes that "bloodwork [] was ordered by the doctor here at Morehouse Parish Detention Center[,]" but he maintains that "those items . . . are not all of the items neurology ordered in December of 2020." *Id.* at 38.

To plead a constitutional violation, a plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (quoting *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); *see Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

Here, Plaintiff does not maintain that he was ever confined in EHCC. The undersigned also confirmed that Plaintiff was not confined in EHCC.[7] Thus, Plaintiff's claim that the medical director at EHCC failed to treat him is implausible. He does not plausibly allege that the director has or had any authority or control over his medical care. *See Marquez v. Woody*, 440 F. App'x 318, 323 (5th Cir. 2011) (per curiam) (holding a prison official was not deliberately indifferent for not issuing dentures where the official "did not have the authority to physically give [the prisoner] dentures or to change the policy on dentures"); *Parrott v. Sizemore*, No. 20-40586, 2022 WL 2072866, at *2 (5th Cir. June 9, 2022) ("Parrott has not plausibly alleged that Sizemore had authority to direct the nursing staff's healthcare decisions[.]"); *Criollo v. Milton*, 414 F. App'x 719, 721 (5th Cir. 2011) (affirming in part the dismissal of a prisoner's Eighth Amendment claim against a practice manager because the prisoner had "not shown how [the] practice manager . . . had any role in his medical treatment"); *Davis v. Lumpkin*, 35 F.4th 958, 963 (5th Cir. 2022) (affirming dismissal because the plaintiff "did not allege that the Director was involved in any of his treatment or the failure to treat him" and did not "mention any relationship between the allegedly unconstitutional acts and the Director[.]").

Plaintiff seems to rely on a document entitled, "Medical/Mental Health Transfer Request for DOC Offenders at Local Facilities," which an official at NCCC sent by facsimile to EHCC's "Medical Department" on November 12, 2020. [doc. # 1-2, p. 16]. In the document, the NCCC official appears to request Plaintiff's transfer to EHCC for "HCV treatment[,]" noting that Plaintiff had a pending appointment for an MRI on November 15, 2020, and "Somet Neuro after MRI." *Id.*

---

[7] TELEPHONE CALL TO EHCC (September 28, 2023).

From what the undersigned can glean, Plaintiff seems to claim that the EHCC director did not approve or otherwise facilitate his transfer to EHCC. However, Plaintiff does not plausibly allege that any medical director at EHCC ever received, read, reviewed, and denied his request for a transfer. In fact, Plaintiff writes that "it is undetermined if a staff at the Medical Department at Elayn Hunt Correctional Center was notified or made aware of [his LabCorp test] results being that [he] is/was a DOC Offender who was being housed at a Parish Prison (NCCC)." [doc. # 1, p. 7].

Plaintiff also attaches a purported response to a letter he sent to a warden at LA Workforce, in which the warden wrote: "Your medical and legal needs may be better fulfilled at a DOC facility. Exploration into this will be made." [doc. # 1-2, p. 27]. Plaintiff surmises, "This letter shows that, again, attempts to notify the appropriate staff at the DOC—the Medical Director at Elayn Hunt is or should have been aware of the plaintiff's serious medical concerns . . . [sic]." [doc. # 1, p. 14]. The connection Plaintiff attempts to establish between the LA Workforce warden's response and the medical director at EHCC's involvement in his medical care is even more tenuous than the connection he attempts to establish above with the NCCC official's facsimile to EHCC. That the warden at LA Workforce stated he would explore fulfilling Plaintiff's medical and legal needs at a "DOC facility" in no way demonstrates that the medical director at EHCC knew of a substantial risk of serious harm to Plaintiff's health. The warden did not even state, for example, that he contacted the medical director at EHCC. Plaintiff, at bottom, presents only a bare non sequitur.[8]

---

[8] Somewhat confessedly, Plaintiff concedes that "it's possible that how he perceives the details of this case could possibly be false." [doc. # 1, p. 44]. He also adds that "further discovery may possibly bring validation." *Id.* As above, however, Plaintiff must present plausible claims; plausibility does not equate to possibility.

Plaintiff does allege that he "has shown that" the medical director at EHCC "received a number of medical documents . . . ." [doc. # 1, p. 40]. The undersigned disagrees that Plaintiff has much such a showing. First, Plaintiff does not describe the medical documents he references or otherwise explain what the EHCC medical director knew. Second, Plaintiff presents this allegation entirely out of context, in a separate portion of his pleading involving a conspiracy claim and involving his attempt plead an official capacity claim against Defendant LeBlanc. Third, Plaintiff's 'showing'— (1) that an official at NCCC sent a transfer request to EHCC's "Medical Department" and (2) that a warden at LA Workforce informed Plaintiff that his "medical and legal needs may be better fulfilled at a DOC facility"—does not *plausibly* establish that the EHCC medical director received, reviewed, and disregarded any documents.

As Plaintiff does not plausibly allege that a medical director at EHCC ever received, read, reviewed, and denied his request for a transfer, he does not allege that the medical director was personally involved in failing to provide the care he sought, and he does not plausibly allege that the medical director *knew* of a substantial risk of serious harm. *See Ball v. LeBlanc*, 792 F.3d 584, 595 (5th Cir. 2015) ("[A] prison administrator who has received an administrative remedy request is not necessarily made aware, without factual corroboration, that there is a substantial risk of serious harm."); *Ornelas v. Hamilton*, 2021 WL 4618465, at *2 (5th Cir. Oct. 6, 2021) (finding that a defendant was not aware of an excessive risk to the plaintiff where the plaintiff alleged that he sent letters to the defendant reporting abuse and asking for help because there was no allegation that the defendant saw or received the letters).

The Court should dismiss these claims.

**6. Conspiracy**

Plaintiff alleges: "Each facility has displayed the same patterns of behavior by ignoring [his] request forms/medical sick-calls/ARPs, refusing medical treatment, refusing access to medical records, refusing to transfer medical records, refusing him copies of legal work and not allowing law library access." *Id.* at 39. Because of these "violations," Plaintiff "believe[s]" that defendants "have conspired against him." *Id.* 39-41.

"A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act, but 'a conspiracy claim is not actionable without an actual violation of section 1983.'" *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995) (*quoting Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990)). "To plead a conspiracy under Section 1983, a plaintiff must allege facts that suggest: 1) an agreement between the private and public defendants to commit an illegal act, and 2) an actual deprivation of constitutional rights." *Shine v. Jones*, 743 F. App'x 566, 568 (5th Cir. 2018). "Charges as to such conspiracies must be based on substantial and affirmative allegations, and no mere gossamer web of conclusion or inference . . . trifles light as air . . . will suffice[.]" *Crummer Co. v. Du Pont*, 223 F.2d 238, 245 (5th Cir. 1955).

Here, Plaintiff fails to plead an essential element of a conspiracy claim: he does not allege that that defendants agreed to commit an illegal act. Plaintiff in fact seems to concede this, maintaining that he "does not have the ability to adequately present a conspiracy claim[,]" and adding erroneously that "an agreement between conspirators is not necessary to prove conspiracy[.]" [doc. # 1, p. 41].

Plaintiff's threadbare allegation that he "believes" that defendants conspired does not suffice: "[c]onclusory allegations that do not reference specific factual allegations tending to

17

show an agreement do not suffice to state a civil rights conspiracy claim under § 1983." *Montgomery v. Walton*, 759 F. App'x 312, 314 (5th Cir. 2019). "Plaintiffs who assert conspiracy claims under the civil rights statutes must plead the operative facts showing a prior illegal agreement, and bald allegations of an agreement do not suffice." *Dunsmore v. Kenyon*, 2022 WL 715490, at *1 (5th Cir. Mar. 9, 2022) (quoted source omitted) (concluding, where the plaintiff did not provide specific facts supporting his allegations that a defendant purposefully authored a report adverse to him "because she was controlled by the Texas Civil Commitment Office[,]" that such "speculative and conclusory allegations [were] insufficient[.]"); *see Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982) ("[M]ore than a blanket of accusation is necessary to support a § 1983 claim.").

In addition, Plaintiff has not plausibly alleged a deprivation of his constitutional rights. He alleges that defendants conspired to deprive him of medical care, but he does not plead a plausible claim of lack of medical care. "No deprivation, no § 1983 conspiracy." *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019); *Curtis*, 761 F. App'x at 306 ("Because Curtis's federal conspiracy claim cannot stand without an underlying constitutional violation, it fails as well."); *Moore v. Grant*, 79 F. App'x 676, 677 (5th Cir. 2003). Accordingly, the Court should dismiss these claims.

## Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Matthew Caleb Sawyer's claims be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation

to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 2nd day of October, 2023.

_____
Kayla Dye McClusky
United States Magistrate Judge